1, Fundo de Investimento em Direitos Creditórios Não-Padronizados. Your Honors, I would like to reserve four minutes for rebuttal. Granted. Your Honors, Appellant Section 1782 Application is the quintessential example for the proper use of Section 1782. However, the District Court's cursory and conclusory opinion strayed so markedly from Intel and this Court's interpretation of its discretionary factors, embracing a different and inappropriate set of factors for foreign applicants. The District Court's opinion did not factor nearly four decades of case law built by this Court in John Deere, in Bayer, in Chevron, in O'Keefe, and most recently in Biomet. The District Court's decision must be vacated as it holds SPS to a far more restrictive standard concerning the use of Section 1782. The decisions simply disregard the liberal approach that both Congress and this Circuit and this Court have applied for foreign applicants using Section 1782. What's the relevance of the more recent Brazilian decision saying it's too early to get this information? We're not saying you won't be able to get it, but it's too early. Go file a suit and then try to get it later. Your Honor, with all respect, the decision does not say that. The decision that we have in the appendix says that SPS had two favorable decisions and the decision says I have no power to compel General Matos Brazil to produce the entirety of the documents. It did not say that caution that we have to wait. That was not the content of the decision. The decision simply states I understand that SPS, that I have ruled, me, Brazilian judge, that I have ruled SPS, sorry, General Matos to produce the entirety of the evidence, and it did not. However, my power to compel at this point General Matos Brazil to produce the entirety of the documents that SPS seeks, it's simply restrictive because of Brazilian law. Is this the September 1st, 2022 decision by Edna Kiyoko Kano? Yes, Your Honor. Appendix 320? And the documents that you're seeking in that proceeding, the entirety of those documents, they're in the possession of GM Brazil? As that's what we assume so, that they are in the possession. Because the point here, Your Honors, is the General Matos Brazil, the documents that we're seeking, that SPS is seeking specifically, it's under a sealed administrative tax proceeding. General Matos can be the only person to show those documents, to show whether General Matos Brazil had, in fact, taken economic benefits of the IPI tax credit. That's the importance here, the relevance, the actual amount. And the proceeding is under seal, and we have no way of finding with the spreadsheets that they provide the limited fraction of discovery they provided in Brazil to get the full picture of what was the precise, if it was the precise amount credited by General Matos Brazil. Are the statutory factors satisfied here? Is there a contemplated proceeding? Nothing's been filed. Your client says it wants this in order to figure out whether and when to file. Shouldn't we, do we even, is it satisfied, and is that a jurisdictional requirement, such that maybe we should just dismiss for lack of jurisdiction? No, Your Honor, because the purpose of Section 1782, if we are going to wait a merits proceeding in Brazil for maybe the similar evidence to be produced, that kills the purpose of the Section 1782. Here, there is a contemplated proceeding. In fact, in Mr. Popa's declaration, in both his first declaration and his second declaration, Foreign Counsel for SPS, he states that since 2019, he's evaluating the proper, the proper way to start this contemplated proceeding, and that's why SPS was diligently enough to file the preliminary discovery proceeding in Brazil to seek that very evidence. And it is different than from the four proceedings that Apolli mentions on their briefs. Why? Number one, they, it concerns different plaintiffs, and it concerns different causes of action, as we have on the appendix. Here, the contemplated proceeding has another cause of action, that it's relied upon the actual economic benefit from the IPI tax credits. That's the most important question. And, of course, it is contemplating because we have, we have a cause of action under Brazilian law, and they are ready to file the proceeding, and they can do. So, are you saying that the four cases where SPS has been dismissed for lack of standing do not include a claim, the economic benefit claim that you just mentioned? Those cases, Your Honor, does not concern SPS at all. Those cases concern General Motors Brazil, but with different plaintiffs. SPS is not involved on that. The two cases that they mention as part of their Lucas Simão declaration, one is not even from the São Paulo court, is another jurisdiction concerning a different plaintiff and different causes of actions with related to obrigação de fazer, a to-do obligation. That's not what we have in our cause of action the way Mr. Popa declaring for SPS describes. And also, the other proceeding on the Court of Appeals of São Paulo, again, different plaintiff, and it's requiring the court to establish the proper and the correct amount of the IPI tax credits for the car dealership. That is exactly what we're not trying to do. We want to start the proceeding based on the grounds of General Motors Brazil use and had economic advantage of this IPI tax credits. And therefore, because SPS is entitled as the actual taxpayer of those credits to seek those credits back, the proper amount and the economic benefit has to be specific. So Intel tells us that even when discovery is authorized, district courts have very broad discretion to decide whether it's appropriate. And so I understand you believe that discovery was authorized and you believe that the district court misapplied the Intel factors, but ultimately the district court said none of that matters because the purpose of the statute would not be realized by allowing this parallel discovery mechanism in the United States when you were looking for the exact same evidence in Brazil. So how is that inconsistent with Intel? Well, Your Honor, it's not only consistent with Intel, but it is inconsistent with Bayer, Chevron, O'Keefe, and Biomed specifically. So number one, the district court did not even review the statutory requirements, which by the way are met here. What actually General Motors is saying that they want to substitute the actual target of that subpoena. And in Biomed, that is expressly what the court denies here and says we cannot look beyond what the statute is saying. With respect to an interested person, that is we are an interested person, that is no question, they don't raise it about it. With respect to the contemplated proceeding is in fact for use because certain funds, the decision in certain funds is brought whenever you can use an evidence for enhance your possibilities of getting what you want in the foreign proceeding, that's what it is. Now with respect to the Intel factors, number one, the first Intel's factors concerns whether the target, so General Motors United States is a participant in the foreign proceeding and not whether you have to exhaust foreign discovery issues. And here, even courts specifically Bayer and O'Keefe and in Bayer, there's a very specific quote that the judge includes here. It says that indeed a quasi-exhaustion requirement of the kind advocated by Bethlehem on appeal has been rejected by those courts that have addressed it. Same thing in O'Keefe and same thing in Bayer. There is no foreign exhaustion discovery requirement and that this report took and punished SPS from seeking the discovery abroad. And that is not a requirement under the first Intel factor. The second Intel factor, Your Honor, look into the receptivity. Receptivity meaning the burden of showing that the court in Brazil would not be receptive to an evidence produced in the United States has to be specific. In O'Keefe, they point here that you have to have examples of such authoritative proof include foreign countries' judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures. That was not the case here. Even this record does recognize that it was pure speculative. As they say on their briefs, the four decisions that they mentioned don't even concern SPS. There are different plaintiffs and different causes of action. So receptivity here is not in accordance with what the circuit has ruled in the past. Now looking into foreign proof gathering restrictions, let's look at Intel. Intel, in fact, Judge Ginsburg, she mentions Bayer, the Bayer precedent. Why is it so important? Because there is no foreign proof gathering restriction. There is a difference, and this is what Chevron mentions. There is a true difference between I went to a foreign court, and even if the foreign court denied my request, which was not what happened here with SPS, in fact, it granted the request twice. I don't understand then why you need the 1782 discovery. The information you're seeking is within the foreign tribunal's jurisdictional reach, correct? And you've got part of what you want. They just haven't given it all to you yet. Why do you need to come to GM for this information? Well, Your Honor, they haven't complied to the state with the preliminary discovery. Isn't that a discovery dispute? That's not a 1782 issue. That's just a discovery dispute. But, Your Honor, the proper requirement in the 1782 is not foreign exhaustion. It's not even whether the discovery is available abroad. The discovery may be available abroad, but the fact is that General Motors Brazil did not produce. And the selective quote that they include as part of their papers that the evidence is in Brazil is actually selective because what the declarant says is because General Motors Brazil is a limited liability company, it doesn't have published financial statements. And the only way to know that is potentially within General Motors Brazil, and they haven't produced that. I guess my question is 1782 isn't a way to, if you're dissatisfied with the progress you're making in discovery in Brazil, and you're frustrated because they're not complying as much as you want them to and the court isn't compelling them to comply. 1782 isn't a way to get around that problem. It's a way to get discovery that's not within the jurisdictional reach of the foreign court, but this discovery seems to me is in the jurisdictional reach of the Brazilian courts. They're just not giving you what you want when you want it. Well, Your Honor, that is not the first intel factor. What turns it to whether General Motors United States is a participant to the Brazilian proceeding. The Brazilian courts have no jurisdiction on an American proceeding. And if we look at the Chevron. The question is whether the discovery is within the court's jurisdiction, jurisdictional reach, not whether General Motors is within their jurisdiction. But the first intel factor, Your Honor, as in Intel, as in Bayer and all the other Chevron, specifically Chevron, is not if discovery is within the jurisdictional reach. Because what would be the purpose of the Section 1782 and the twin aims of the statute, which is provide efficient litigation to foreign litigants and also to be an effective in the United States to rule by an example. And in Chevron, that issue specifically was I don't care if the Ecuadorian court denied the same discovery, or even if it's I don't care. It's not for me, a U.S. court, to get into those merits. As of now, I can produce a discovery. And whether the court will accept, that's what's important. So in Chevron, this issue was specifically discussed. I know that I ran out of time. All right. We'll hear you back on rebuttal for your four minutes. May it please the Court, Luke Layton for the appellee, General Motors. There is very broad discretion given to district courts under this statute. Before we even get to the discretion, the statutory factors, neither side is briefed, are these jurisdictional or not? Well, we did raise, I wanted to say, we think, first of all, the district court correctly exercised its discretion. But going to the jurisdictional factors. Are they jurisdictional? Well, yes. They're jurisdictional in the sense that they are requisites of the statute. Right. If they're not jurisdictional, you can skip over them and get to the discretionary ones. But if they're jurisdictional, you would have to tackle them first. And I just didn't see anything in your briefing that talked one way or the other about this. I mean, 1782 doesn't use the word jurisdiction. But is there any other source of jurisdiction here? Well, Your Honor, I regard we did brief below and here the issue of reasonable contemplation, whether this statute, whether the proceeding they want to bring in Brazil is within reasonable contemplation, I think that's a jurisdictional requirement here. And I don't think they have any claim. And that wipes out this cause of action. In addition, what they're seeking here, the real target. Back up.  Yes. Whether or not it's jurisdictional, why isn't that satisfied? She says, we've got a case lined up. As soon as we can, we're going to pull the trigger. Isn't that enough? Because the record proves the opposite. Because in this case, and they cite two cases where, for example, someone comes in with a lawyer saying, here's our cause of action, and cites authorities. We have an overwhelming record, which they concede. And what is that overwhelming record? Four decisions by people in just, they say, well, those decisions don't involve SPS. They involve other GM dealers. Every GM dealer in Brazil is within the same, is identically situated. In each one of those cases, the Brazilian courts say, you have no cause of action. Because here, we're waiting for ratification of the credit. Until ratification, and by the way, this whole discovery dispute, we're talking about ratification ending in July 2024. And GM Brazil has said, when it is ratified, GM Brazil is going to pay. We've said this is a modest prima facie showing to be made. You know, that doesn't, it seems like that's satisfied here. Do we defer to the district court? I mean, abuse of discretion review, do we defer to the district court's judgment that, like, yeah, that's contemplated enough? On this issue, first of all, the district court, to be fair, did not rule. The district court, so there's nothing to do. But I don't think you would defer. But what I would say is this, Your Honor. All they came up with is, if you look at the entire sum and substance of their case on reasonable contemplation, there's one paragraph in the supplemental declaration from their counsel, and all he says is. Bruno Papa. Hmm? It's Papa. Papa, correct. He says, I think we have a case. And I'll give you the sum and substance of his responses to four cases that are clear, which our counsel put in. We translated two of those cases. And his argument is, number one, he says, those cases didn't involve discovery. Right. They didn't involve discovery. They threw the whole case out. Second, and I think you heard this from counsel a moment ago. Counsel said here, as they said below and as they said in the briefs, well, those decisions didn't consider the theory that they have, that somehow GM Brazil got the benefit of the credit. First of all, it did not. But let's leave that factual issue aside because it's not in the record. That assertion by Mr. Papa is clearly demonstrably wrong, because when you read the translations of the two opinions that we put in, and they didn't object to this, in one case, it's a Brazilian appellate court. The appellate court says, the appellate court affirms a finding that rejected proffer of expert evidence on this benefit issue. In that case. Your friend on the other side says, some of these aren't even from the same court. They don't involve the same party. How generalizable is that? Well, it's generalizable. If they had another court, if they said, look, these are, I think most of these decisions are from Sao Paulo, which is a pretty big place. If they said, well, Sao Paulo says one thing and Rio de Janeiro says something else, okay. But here, what they do is, they cite to no statute, they cite to no opinion. In other words, all you have to do, Brazil's a big place with lots of lawyers. All they have done is, they have their own counsel say, I think we have a claim. And if that's sufficient, then this reasonable contemplation. I'm sorry. I'm sorry. Excuse me. It sounds like you're asking us to look at whether there would be a valid cause of action and whether they have any likelihood of success in Brazil as opposed to whether they contemplate filing suit. And as we know from, you know, domestic court proceedings, people file suit all the time. And they reasonably contemplate and, in fact, do file suits when courts find that there is no valid cause of action and dismiss them. But Intel doesn't tell us to go any farther than the contemplation. Well, what I would say is, what the courts do in these circumstances is they look at, they do look at, there are many opinions that each side has cited on this. The courts actually look at, what is the law here? And here we have put in that law. And second, what courts also look at is the question of delay. And here, what's striking about this is, they, SPS, purchased this credit in the beginning of 2019. We're coming up on five years to the beginning of 2019. They have not brought a proceeding on the merits. Why? The circuit court decisions tell us that we have to look at the legitimacy of their contemplated cause of action. The district court here did not look at it. But I think there are cases, and we've cited them, looking at reasonable contemplation, where courts actually do refuse to apply the statute where the cause of action has no merit. And here, what has happened is, sorry, I know we should go to the discretionary. I'm happy to. Otherwise, I think it would be helpful to walk through the factors in some order. So, first of all, under Chevron, you don't dispute that it's your side that has the burden to demonstrate facts warranting the denial of the application, correct? So, you've got the burden of proof here, right? Under Chevron. Your Honor, what I would say is that on the statutory factors, yes, I think we do. When it comes to the discretion, I think on discretion, the issue for this court is, we have a clear discretionary ruling. Okay, but did the district court have to hold your client to a burden of proof? I think the district court, it makes a discretionary decision. When the district court finds a tie, is the district court supposed to say, you haven't shown it, or they haven't shown it? On the statutory factors. On the discretionary factors. On the discretionary factors, Your Honor, first of all, I would say that the burden of proof isn't, well, I'll put it this way. Perhaps the burden of proof is on us, but I have not seen any. I think Chevron says that. Okay. So, I'm questioning the court at Appendix 9 said, you have the burden to demonstrate facts warranting the denial. Okay. But then when I read pages Appendix 10 and 11, it looks like the court put that burden on SPS. It said SPS admits it could obtain the evidence in the discovery proceeding. It didn't say anything about what GM had shown. So, I'm wondering, wouldn't that, if the court got the burden of proof wrong, wouldn't that be a legal error that would make its reasoning an abusive discretion? If the court clearly got the burden of proof wrong, that would definitely go. There are other discretionary factors the court also looked at. But, Your Honor, I would respectfully submit that what the district court is doing in the passage that Your Honor referenced is two things. First of all, GM did put in evidence. We put in evidence. It was undisputed. The evidence was on that first factor, which, as Judge Porter said, looks at jurisdictional reach. There was no dispute. Wait a second. Wait a second. So, if the first factor is just about jurisdictional reach, fine. The entirety of the discussion is one page, and it's all about GM Brazil is there, and the documents are there. But the court says SPS admits the documents are there. But, you know, Intel, there's one, there's a paragraph on this on page 264 of Intel, and it starts by saying, is it here, is the party here, is it there? But the conclusion of that paragraph of Intel is, hence, their evidence available in the United States may be unobtainable absent 1782A8. I don't see reason. The reasoning is just, you know, the evidence is obtainable there. But the declarations they cite, if I follow the citations, they cite Appendix 29, which says GM Brazil's documents aren't anywhere else. They're all in GM Brazil. And then that cites over to Bruno Papa's Declaration, Paragraph 5, at Appendix 74, which says the documents, we have the documents, but it doesn't say anything about whether they are obtainable via discovery processes in Brazil. Isn't that a legal error for the court to conflate whether documents are there with whether they're obtainable absent 1782A8? They are. First of all, I think, with respect, I think the standard is jurisdictional reach. And those are the words that CULSR uses. Where? Intel? Intel also uses jurisdictional reach. I think it's also, it's certainly in CULSR, and it's certainly in O'Keefe. Okay. I'm looking at Intel, and Intel's focus is what's unreachable, what is unobtainable absent the aid, not jurisdictional reach. What I'm looking at in Intel on 264, when it's discussing the first factor, after the citation to reply brief, it says, can itself, a foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. And there's a citation, and the citation includes, can exercise, it's quoting, I think, Smith, can exercise its own jurisdiction to order production of the evidence. And that is why the cases, including the Third Circuit cases like CULSR, speak in terms of jurisdictional reach. And what happened here is that there are clear statements, which the district court knew all about, in which, in PAPA's declaration, and in their papers below, they say, in fact, there's a statement which I think the district court may cite, where Mr. PAPA says, well, the party who, it is GM Brazil and its advisors who have all this evidence. There was no dispute on this issue. The reasoning at the bottom of Appendix 10 is here, even if GM's financial statements include the information, SPS can obtain the same information in the pending foreign court proceeding. Yes. But that is a misreading of PAPA's declaration, which does not say it can get it. It says it's in Brazil, but it may not be able to get it, given the nature of the Brazilian discovery proceeding limitation. I believe, Your Honor, that it is a correct reading, because what Intel is saying and what CULSR and O'Keefe say is, does that court, does that foreign court have the jurisdictional powers? Intel says, does it have, can it exercise its own jurisdiction to order production of the evidence? And that is true here. That was not ultimately the district court's reasoning. At the end, it reasoned it can get it there, not just they have jurisdiction there. And that appears to be a misreading of the declaration it's citing and of Brazilian law. First of all, at the time the district court acted, what the situation was, SPS was asserting in Brazil that those materials were available. Indeed, they were arguing that GM should have already produced them. All right. You're not answering. Let's move on to the second factor. What would be the purpose of having 1782 if the documents in the foreign tribunal could always be got, could always be obtained? If the only standard or test is you're not getting what you want from the Brazilian court, even though it's obtainable there, then you can come get 1782 relief. I'm not sure what 1782 is doing. Well, it does a lot of work. What it does is, for example, in the traditional case, there's material within the jurisdictional reach of the United States and not within the jurisdictional reach of another court, and you get that information. That's most of the work that it does. Sir, those are the arguments that were made in Intel, the losing arguments, that you should graft an exhaustion requirement on because it's kind of logical to have an exhaustion requirement, avoid duplicating, but the majority, and then even more emphatically, Justice Scalia said, maybe it's logical, but the text doesn't require that. So I think what you're arguing seems very practical. I just don't see what tells us as judges to limit the statute that way. Well, here's what I think is going on, Your Honor, and on the exhaustion point, they argue that Judge Connolly was imposing an improper exhaustion requirement. This is the opposite of exhaustion. In exhaustion, what happens is someone starts a 1782 proceeding in the United States, and the court says, no, before I even listen to you, go seek these documents somewhere else. That's exhaustion. That's not what happened here. What happened here was a choice, and what's really going on is Judge Connolly is looking at the situation, and he says this is a proceeding which is a tactical filing to bring parallel proceedings for the same discovery, and they conceded when we put in, if you look at the list of documents they're requesting in Brazil and the list of documents in the United States, there's complete overlap. Mr. Clayton. Yeah. Okay, you're very long-winded. Could we just get some answers here? Let's go on to the second intel factor. Okay. Didn't Judge Connolly, Chief Judge Connolly, excellent jurist, but misunderstand the second intel factor. He equated the character of the foreign proceeding as to whether you can get the evidence in the foreign proceeding, but intel talks about whether it's admissible. You know, would you be able to admit it if we got it? Here the concern is would they receive the evidence if you wound up producing it, not whether you could go get it in Brazil. So didn't Chief Judge Connolly misunderstand the second factor? That looks at, and here I'm farther down on I think the same page we were looking at before. It says the court may take into account nature of the foreign tribunal, not really a question here, the character of the proceedings underway abroad, and the receptivity to judicial assistance. Those are different factors. And what's happening here is I think, and Judge Connolly I think is making this clear, he's saying what's happening in Brazil. The character of that proceeding is a discovery proceeding. That's all that it's about. And what he's saying is there are two possible outcomes in that discovery proceeding. He's not making any finding, and I can see that's going to receptivity because he's looking at the character of the proceedings. And he says either they're duplicative, if they win, or if they don't win, it's circumvention. Okay, duplicative, that does start to sound like an exhaustion requirement. No, because I think the issue with exhaustion is here what we have is a choice. In other words, if they had come into the United States without filing any Brazilian proceeding on discovery, and Judge Connolly had said go away, go to Sao Paulo before I even listen to you, that's exhaustion. What he said here was you've been litigating for a year, basically. Well, it was many months at that point in Brazil, asking the Brazilian court to do just what you want me to do. GM had already produced the spreadsheet showing the credit, and it had already produced all the papers in the litigation there. And he said, I want you, you, you, you, SPS. Your Honors, I would like to call your attention that Apolline not once said they don't have possession, custody, or control of these documents. They keep on and on talking about, oh, those are in Brazil, those are in Brazil. Here in O'Keefe mentioning John Deere and Bayern, we have never held that an applicant must seek discovery relief in the foreign forum first. For example, in Bayern, we rejected the argument that an application should be denied when the applicant could have gone to the foreign court to seek protection. So there's no exhaustion requirement. Yeah. But when you are seeking the information that is obtainable in Brazil and you're not getting all of the relief that you want, is 1782 a proper vehicle to try to get around that problem? Your Honor, we're not trying to get around anything because in the discovery proceeding, as Bruno Palpas mentioned in his declaration, is a limited discovery proceeding. The court twice, twice granted SPS requests. And it just states we don't have the power to compel. They only produce a spreadsheet. And guess what? The spreadsheet doesn't show the creds. It doesn't show what we need. Why was not everything produced? We don't know. They don't want to produce. And let's say just in theory that this same discovery could be obtained in a future proceeding, in a future merit proceeding. Will it be obtained if they twice, if General Amador de Brazil twice said we're not going to produce? And, in fact, when we're talking about when counsel came here and said that Mr. Palpas did not talk about the cause of action, well, in his first declaration, Your Honor, we have here an entire section saying SPS cause of action against General Amador de Brazil. And it's over four pages. And it's saying that we don't have a cause of action. Again, twice we went to the court in Brazil. Twice we got the request to be produced. And they did not produce. The proper use of Section 1782, if we, if this Court does not abide by all the cases in the past, they're concerning even in Chevron the same exact factor. This is the proper use of Section 1782. Efficient and also United States has to be the guardian and lead by example. So here, as I mentioned before, I know that my time is running, but I just want to make one general assessment. As I look at the general ego, the symbol of the United States, and, of course, you know, I come here today seeking justice, and I hear everyone who comes to this Court seeking justice. Here, I urge this Court to use this arrow to maintain this peace in over 40, almost 40 years of good precedent in Section 1782, including intel. Here, SPS not only meets all the statutory requirements, all of it, and also the discretionary factors of intel, all way for SPS. General Motors is not in Brazil, is not within the Brazilian jurisdiction of the Court. General Motors United States even states in its published financial statements that a specific line item for Brazil, they have possession and control of these documents. And in Brazil, the very administrative proceeding is under seal. Why is it under seal, and why they haven't produced the evidence? Your Honors, I urge you to consider the facts of this case. And again, the second intel factor, receptivity from the Courts, that is the burden on them, and they haven't met. They just throw decisions, four decisions, and one, it's from the São Caetano do Sul Court. It's not even from São Paulo, and don't concern SPS at all. What about the two he said that they provided, that they translated? Why shouldn't we read those as they do? Well, Your Honor, if you look at appendix page 240 and 234, and apologies, it may have been on the Portuguese side, but you will see that the cause of action is different. These decisions have both, both of these decisions were decided by August 2020, even before or in the middle when SPS started its preliminary discovery proceeding, and those decisions concern other dealerships, and the dealerships wanted the Court to estimate precisely the amount of the credit. That is not what SPS wants to do in this contemplated proceeding. It's another thesis. That's why we've been very careful enough not to go on the rabbit route that others have gone through. We're not asking the Brazilian Court in the proceeding and the merits proceeding that SPS will file, estimate the amount. No. We want to know whether they had economic benefits to know the precise amount. That's what he says in this paragraph five. All right. Thank you, counsel. Okay. We thank both sides for their excellent briefing and argument. We'd ask that the parties work together, prepare a transcript. We would also ask that each side, within seven days, say by Monday, December 18th at noon, submit a three-page, single-spaced supplemental letter brief, limited to the issue of whether the statutory factors are jurisdictional or not under 1782. And the case is submitted, and we'll go off the record, and we'd like to greet counsel at sidebar.